UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **HERLAND GUTIERREZ**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**SUTHERLIN MOTORS MONTGOMERY, INC.**<br><br><br><br>    **Defendant.** | **CASE NO:**<br><br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiff Herland Gutierrez, by and through his attorneys, AVENTUS LAW, PLLC, alleges and states as follows:

## PRELIMINARY STATEMENT

1.  The Plaintiff, Mr. Herland Gutierrez, a Hispanic male of Bolivian origin of more than 40+ years of age ("Plaintiff," or Mr. Gutierrez), brings this action against Sutherlin Motors Montgomery, Inc. ("Defendant," or "Sutherlin") for violations of Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e); 42 U.S.C. § 1981; and 29 U.S.C. § 621 *et seq* ("ADEA").

2.  Defendant hired Mr. Gutierrez on or about February 2, 2024, as a Finance Manager. During Plaintiff's tenure at Sutherlin, he satisfactorily performed his job. Despite Mr. Gutierrez's performance, Defendant discriminated against him because of his race, national origin and age and retaliated against him. On or about July 17, 2024, Defendant subjected Mr. Gutierrez to a constructive discharge.

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under Title VII, § 1981, and ADEA. This court has supplemental jurisdiction over plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a).

## VENUE

4.  Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practice was committed in Alabama within the Middle District; 42 U.S.C. § 2000e-5(f)(3), because the relevant employment records are maintained in this district; and 42 U.S.C. § 2000e-5(f)(3), because Defendant has its principal office in this district, and there is no other district that has a substantial connection to the claim.

## CONDITIONS PRECEDENT

5. On September 18, 2024, Plaintiff timely filed a charge of national origin and age discrimination and retaliation with the Equal Employment Opportunity Commission (EEOC). Exhibit A.

6. On or about September 20, 2024, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII. Exhibit B.

## PARTIES

7. Plaintiff, a Hispanic male of 40+ years of age, resides in Lehigh Acres, Florida. Plaintiff is a citizen of Florida.

8. Plaintiff is an employee, as defined by Title VII. Plaintiff worked for Sutherlin as a finance manager in Montgomery, Alabama, from approximately February 2, 2024, through approximately July 17, 2024.

9. Upon information and belief, Sutherlin is an Alabama corporation with its headquarters in Montgomery. The defendant maintains offices and does business in Montgomery and is an employer as defined by Title VII.

## FACTS

**Plaintiff is Subjected to Disparate Treatment Based on his Race/National Origin and Age**

10. Mr. Gutierrez began working for Defendant on or about February 2, 2024, as finance manager in Defendant's finance department at Defendant's Toyota of Montgomery location.

11. As a Finance Manager, Mr. Gutierrez's role involved preparing and sending customer loan applications to various banks for approval.

12. Mr. Gutierrez always inspected the finance applications for accuracy to make sure the customers provided sufficient documentation for proof of income and other factors central to the deal.

13. Mr. Gutierrez always inspected the finance applications for accuracy to make sure the customers provided sufficient documentation for proof of income and other factors central to the deal.

14. Mr. Gutierrez was known to be thorough and rational.

15. Regardless of his consistent work performance, Mr. Gutierrez was subjected to near-daily comments about his ethnicity/national origin and age.

16. Mr. Gutierrez suffered criticisms and other microaggressions and was often told, "People like "you" do not know what they are doing and that Hispanics are crooks," or words to that effect.

17. Mr. Gutierrez suffered nearly daily biased comments and microaggressions about his Hispanic heritage, accent, food, and height. On a regular basis employees made comments about his size, saying, "Hispanic men are short," or words to that effect.

18. When Mr. Gutierrez brought food into work, employees often asked, "How can you eat that?" or "What is that? " or similar questions.

19. Furthermore, Mr. Gutierrez was subjected to near daily disparaging remarks about his age.

20. Defendant Sales Managers Daniel and Chris nearly daily told Mr. Gutierrez that he was "too slow," "too old to do his job," "old people should just get out," or words to that effect.

21. Defendant Sales Managers Daniel and Chris often denied Mr. Gutierrez the opportunity to earn income, bonuses, or commissions by directing salesman to take their customers to younger finance managers, stating that Mr. Gutierrez was "too old and slow," or words to that effect.

**Plaintiff is Subjected to Retaliation for Complaining About Discrimination**

22. In or about March 2024, Mr. Gutierrez complained about discrimination to General Manager Jimmy, a White male, and to Human Resources Representative Karen, a White female.

23. Defendant failed to take any corrective action or remedial actions to remedy the complaint of discrimination.

24. Instead, the Defendant retaliated against Mr. Gutierrez for complaining. In fact, Mr. Gutierrez's customer base steeply declined after he complained about discrimination. Where younger finance managers, outside of his protected category, would have about 100 customer interactions, Mr. Gutierrez only received about 60.

25. This occurred in contravention to the Defendant's established customer assignment protocols.

26. Defendant utilizes an app that randomly assigned customers to finance managers. However, sales managers would direct their salesmen to younger non-Hispanic finance managers, even when customers were randomly assigned to Mr. Gutierrez.

27. Sutherlin made significant detrimental changes to Mr. Gutierrez's schedule. He was forced to work on his days off and for longer hours, from the opening to the closing of business.

28. Additionally, he was suspended every other day for 3 to 4 hours, which meant he was unable to assist customers and effectively denied commissions, bonuses, and other income during the hourly suspensions.

29. Furthermore, after complaining, Defendant employee Tyler pulled a gun on Mr. Gutierrez, stating, "Six people have been killed in this dealership. You don't now Montgomery," or words to that effect.

**Plaintiff Reports to Defendant His Good-Faith, Reasonable Belief that Salesman, Sales Managers, and other Finance Managers Commit Fraud, Bank Fraud, and Finance Fraud**

30. As a Finance Manager, Mr. Gutierrez's role involved preparing and sending customer loan applications to the bank for approval.

31. Mr. Gutierrez always inspected the finance applications for accuracy to make sure the customers provided sufficient documentation for proof of income and other factors central to the deal.

32. Mr. Gutierrez discovered that salesmen fabricated customer income, reduced their actual debt on applications, and engaged in other fraudulent practices to secure bank approvals.

33. On many occasions, after he rejected a customer's finance application because the customer could not provide proof of income or because the customer provided different financial information than what the salesman provided, sales managers would direct the same salesman to other finance managers, and the fraudulent application was sent to the lenders for approval.

34. Mr. determined that these practices were part of an ongoing conspiracy to defraud customers and lending institutions. In fact, Mr. Gutierrez observed salesmen, sales managers, finance managers, and the general manager act complicit with the conspiracy.

35. In or about March 2024, Mr. Gutierrez reported the fraudulent activities to the Finance Director, General Manager Jimmy, and HR Karen Hanshaw.

36. Defendant took no corrective action.

37. Mr. Gutierrez was also subjected to threatening conduct because he refused to participate in Sutherlin's fraud. For instance, a manager had warned him that "the last whistleblower that told was killed."

38. Sutherlin made significant detrimental changes to Mr. Gutierrez's schedule. He was forced to work on his days off and for longer hours, from the opening to the closing of business.

39. Additionally, he was suspended every other day for 3 to 4 hours, which meant he could not assist customers and effectively denied commissions, bonuses, and other income during the hourly suspensions. Sutherlin provided no explanation for these suspensions. Sutherlin withheld sales from Mr. Gutierrez, walled him off from certain customers, or sent him other deals as a form of punishment.

40. Mr. Gutierrez was subjected to a constructive discharge on July 17, 2024.

## COUNT ONE

**National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e et al.)**

41. Plaintiff repeats and realleges paragraphs 1 through 18 hereof, as if fully set forth herein.

42. Plaintiff is Bolivian and qualified for his position when Defendant subjected him to a hostile work environment.

43. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding his national origin. For example, Mr. Gutierrez suffered criticisms and other microaggressions and was often told, "People like "you" do not know what they are doing and that Hispanics are crooks," or words to that effect. On a regular basis, employees made comments about his size, saying, "Hispanic men are short," or words to that effect. When Mr. Gutierrez brought food to work, employees often asked, "How can you eat that?" or "What is that? " or similar questions, including comments about his accent.

44. In addition, similarly situated non-Bolivian employees and employees outside of the protected group were treated more favorably by Defendant. These employees were not subject to the same level of scrutiny or harassment.

45. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages, whether in whole or in part, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

46. Defendant intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT TWO

**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**(42 U.S.C. §§ 2000e et al.)**

47. Plaintiff repeats and realleges paragraphs 1 through 18, and 41 through 46 hereof, as if fully set forth herein.

48. Plaintiff is Hispanic and qualified for his position when Defendant subjected him to a hostile work environment.

49. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding his national origin. For example, Mr. Gutierrez suffered criticisms and other microaggressions and was often told, "People like "you" do not know what they are doing and that Hispanics are crooks," or words to that effect. On a regular basis, employees made comments about his size, saying, "Hispanic men are short," or words to that effect. When Mr.

Gutierrez brought food to work, employees often asked, "How can you eat that?" or "What is that?" or similar questions, including comments about his accent.

50. In addition, similarly situated non-Hispanic employees and employees outside of the protected group were treated more favorably by Defendant. These employees were not subject to the same level of scrutiny or harassment.

51. As a direct and proximate result of Defendant's discrimination, Plaintiff suffered damages, whether in whole or in part, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

52. Defendant intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT THREE

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964
### (42 U.S.C. §§ 2000e et al.)

53. Plaintiff repeats and realleges paragraphs 1 through 29 and 47 through 52 hereof, as if fully set forth herein.

54. In or around March 2024, Plaintiff engaged in protected activity by complaining to General Manager Jimmy and HR Karen Hanshaw about the above-referenced discriminatory treatment based on Plaintiff's race/national origin.

55. Only days after Plaintiff complained of race/national origin discrimination, Defendant Sutherlin made significant detrimental changes to Mr. Gutierrez's schedule. He was forced to work on his days off and for longer hours, from the opening to the closing of business.

56. Additionally, he was suspended every other day for 3 to 4 hours, which meant he was unable to assist customers and effectively denied commissions, bonuses, and other income during the hourly suspensions.

57. Furthermore, after complaining, Defendant employee Tyler pulled a gun on Mr. Gutierrez, stating, "Six people have been killed in this dealership. You don't now Montgomery," or words to that effect.

58. Defendant's stated reason for the intermittent suspensions, schedule changes and effective denial of Plaintiff's income, bonuses, and commissions is pretextual and baseless. Defendant subjected Plaintiff to this disparate conduct because he complained about race/national origin discrimination in March 2024.

59. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages, benefits, bonuses, commissions, and other compensation, and the costs of bringing this action.

60. Defendant intentionally violated Plaintiff's rights under Title VII, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT FOUR

### Race Discrimination in Violation of § 1981
### (42 U.S.C. § 1981)

61. Plaintiff repeats and realleges paragraphs 1 through 18 hereof, as if fully set forth herein.

62. Plaintiff is a Hispanic male and qualified for his position when Defendant subjected him to a hostile work environment.

63. Defendant is a corporate entity engaged in interstate commerce bound by 42 U.S.C. § 1981 prohibitions. Defendant's actions toward Plaintiff were undertaken by agents or employees acting within the scope of their employment.

64. Plaintiff had a contractual relationship with Defendant through his employment. As an employee, Plaintiff had the right to the same terms, conditions, privileges, and benefits of employment as non-Hispanic employees.

65. Defendant intentionally discriminated against Plaintiff based on his race in violation of 42 U.S.C. § 1981.

66. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding his national origin. For example, Mr. Gutierrez suffered criticisms and other microaggressions and was often told, "People like "you" do not know what they are doing and that Hispanics are crooks," or words to that effect. On a regular basis, employees made comments about his size, saying, "Hispanic men are short," or words to that effect. When Mr. Gutierrez brought food to work, employees often asked, "How can you eat that?" or "What is that? " or similar questions, including comments about his accent.

67. As a direct and proximate result of Defendant's racially discriminatory conduct, Plaintiff suffered significant damages, including emotional distress, humiliation, loss of wages and benefits, harm to his reputation, and other economic and non-economic harms.

68. Defendant's discriminatory conduct was intentional, willful, and motivated by racial animus toward Plaintiff. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under 42 U.S.C. § 1981, entitling Plaintiff to both compensatory and punitive damages.

## COUNT FIVE

### National Origin Discrimination in Violation of § 1981
### (42 U.S.C. § 1981)

69. Plaintiff repeats and realleges paragraphs 1 through 18 hereof, as if fully set forth herein.

70. Plaintiff is of Bolivian descent and qualified for his position when Defendant subjected him to a hostile work environment.

71. Defendant is a corporate entity engaged in interstate commerce bound by 42 U.S.C. § 1981 prohibitions. Defendant's actions toward Plaintiff were undertaken by agents or employees acting within the scope of their employment.

72. Plaintiff had a contractual relationship with Defendant through his employment. As an employee, Plaintiff had the right to the same terms, conditions, privileges, and benefits of employment as non-Bolivian employees.

73. Defendant intentionally discriminated against Plaintiff based on his national origin in violation of 42 U.S.C. § 1981.

74. Defendant regularly made discriminatory comments to Plaintiff and his co-workers regarding his national origin. For example, Mr. Gutierrez suffered criticisms and other microaggressions and was often told, "People like "you" do not know what they are doing and that Hispanics are crooks," or words to that effect. On a regular basis, employees made comments about his size, saying, "Hispanic men are short," or words to that effect. When Mr. Gutierrez brought food to work, employees often asked, "How can you eat that?" or "What is that? " or similar questions, including comments about his accent.

75. As a direct and proximate result of Defendant's racially discriminatory conduct, Plaintiff suffered significant damages, including emotional distress, humiliation, loss of wages and benefits, harm to his reputation, and other economic and non-economic harms.

76. Defendant's discriminatory conduct was intentional, willful, and motivated by racial animus toward Plaintiff. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights under 42 U.S.C. § 1981, entitling Plaintiff to both compensatory and punitive damages.

## COUNT SIX

### Retaliation in Violation of § 1981
### (42 U.S.C. § 1981)

77. Plaintiff repeats and realleges paragraphs 1 through 29 hereof, as if fully set forth herein.

78. In or around March 2024, Plaintiff engaged in protected activity by complaining to General Manager Jimmy and HR Karen Hanshaw about the above-referenced discriminatory treatment based on Plaintiff's race/national origin.

79. Only days after Plaintiff complained of race/national origin discrimination, Defendant Sutherlin made significant detrimental changes to Mr. Gutierrez's schedule. He was forced to work on his days off and for longer hours, from the opening to the closing of business.

80. Additionally, he was suspended every other day for 3 to 4 hours, which meant he was unable to assist customers and effectively denied commissions, bonuses, and other income during the hourly suspensions.

81. Furthermore, after complaining, Defendant employee Tyler pulled a gun on Mr. Gutierrez, stating, "Six people have been killed in this dealership. You don't now Montgomery," or words to that effect.

82. Defendant's stated reason for the intermittent suspensions, schedule changes and effective denial of Plaintiff's income, bonuses, and commissions is pretextual and baseless. Defendant subjected Plaintiff to this disparate conduct because he complained about race/national origin discrimination in March 2024.

83. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages, benefits, bonuses, commissions, and other compensation, and the costs of bringing this action.

84. Defendant intentionally violated Plaintiff's rights under § 1981, with malice or reckless indifference, and, as a result, is liable for punitive damages.

## COUNT SEVEN

### Age Discrimination in Violation of the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq*.)

85. Plaintiff realleges and incorporates by reference all matters of law and fact asserted in preceding paragraphs 19 through 29 as if fully set forth herein.

86. The Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., prohibits employers from discriminating against employees who are at least 40 years of age on the basis of age with respect to hiring, discharge, compensation, terms, conditions, or privileges of employment.

87. Plaintiff is a member of the protected age group under the ADEA, being 56 years old at the time of his employment and termination by Defendant.

88. Defendant is an employer engaged in an industry affecting commerce and has at least 20 employees, making it subject to the provisions of the ADEA. Defendant's discriminatory actions toward Plaintiff were committed by its agents and employees acting within the scope of their authority.

89. Plaintiff was qualified for his position as a finance manager, and performed his job duties satisfactorily.

90. Defendant discriminated against Plaintiff because of his age in violation of the ADEA by engaging in discriminatory actions.

91. Beginning in February 2024, Plaintiff experienced harassment from sales managers. These individuals subjected Plaintiff to unwarranted scrutiny and disparaging comments about his performance, despite his satisfactory job performance.

92. Specifically, Defendant Sales Managers Daniel and Chris nearly daily told Mr. Gutierrez that he was "too slow," "too old to do his job," "old people should just get out," or words to that effect.

93. Defendant Sales Managers Daniel and Chris often denied Mr. Gutierrez the opportunity to earn income, bonuses, or commissions by directing salesman to take their customers to younger finance managers, stating that Mr. Gutierrez was "too old and slow," or words to that effect.

94. Similarly situated younger employees and employees outside of the protected age group were treated more favorably by Defendant. These employees were not subjected to the same level of scrutiny, harassment, or retaliatory actions.

95. As a direct and proximate result of Defendant's age discrimination, Plaintiff has suffered significant damages, including lost wages, lost benefits, emotional distress, humiliation, and harm to his reputation.

## COUNT EIGHT

### Retaliation in Violation of the Age Discrimination in Employment Act ("ADEA")
### (29 U.S.C. § 621 et seq.)

96. Plaintiff realleges and incorporates by reference all matters of law and fact asserted in preceding paragraphs 19 through 29 and 85 through 95 as if fully set forth herein.

97. Plaintiff engaged in a protected activity under the ADEA by reporting and opposing unlawful age-based discrimination and harassment in the workplace, including making complaints about the conduct of other management personnel to General Manager Jimmy and HR Karen Hanshaw.

98. Specifically, Plaintiff complained that Defendant Sales Managers Daniel and Chris nearly daily told Mr. Gutierrez that he was "too slow," "too old to do his job," "old people should just get out," or words to that effect.

99. Defendant Sales Managers Daniel and Chris often denied Mr. Gutierrez the opportunity to earn income, bonuses, or commissions by directing salesman to take their customers to younger finance managers, stating that Mr. Gutierrez was "too old and slow," or words to that effect.

100. Similarly situated younger employees and employees outside of the protected age group were treated more favorably by Defendant. These employees were not subjected to the same level of scrutiny, harassment, or retaliatory actions.

101. After Plaintiff's complaints, Defendant subjected Plaintiff to adverse employment actions, including increased scrutiny of his work, unjustified performance critiques, and retaliatory hostile treatment by co-workers and supervisors.

102. In fact, Mr. Gutierrez's customer base steeply declined after he complained about discrimination. Where younger finance managers, outside of his protected category, would have about 100 customer interactions, Mr. Gutierrez only received about 60.

103. This occurred in contravention to the Defendant's established customer assignment protocols.

104. Defendant utilizes an app that randomly assigns customers to finance managers. However, sales managers would direct their salesmen to younger non-Hispanic finance managers, even when customers were randomly assigned to Mr. Gutierrez.

105. Sutherlin made significant detrimental changes to Mr. Gutierrez's schedule. He was forced to work on his days off and for longer hours, from opening to closing business.

106. Additionally, he was suspended every other day for 3 to 4 hours, which meant he was unable to assist customers and effectively denied commissions, bonuses, and other income during the hourly suspensions.

107. There is a direct causal link between Plaintiff's protected activity and the adverse actions taken against him. The ADEA prohibits employers from retaliating against employees who oppose unlawful discrimination or participate in investigations or proceedings related to such claims.

108. As a result of Defendant's unlawful retaliatory actions, Plaintiff has suffered and continues to suffer economic losses, including lost wages and benefits, emotional distress, and damage to his career prospects.

[SIGNATURE PAGE FOLLOWS]

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant as follows:

A. An award of front pay in lieu of reinstatement;

B. An award of back pay, including lost wages, benefits, and other compensation, from the date of Plaintiff's termination to the date of judgment;

C. Compensatory damages for emotional distress, pain and suffering, mental anguish, reputational harm, and other non-economic losses;

D. Punitive damages to the extent allowed by law, to punish and deter Defendant's willful, malicious, and reckless conduct;

E. An award of Plaintiff's reasonable attorneys' fees, costs, and expenses incurred in bringing this action, pursuant to 42 U.S.C. § 12205 and other applicable laws;

F. An award of pre-judgment and post-judgment interest on all amounts awarded, as permitted by law; and

G. Any other relief that the Court deems just, proper, and equitable under the circumstances.

## TRIAL BY JURY DEMANDED

Plaintiff requests a trial by jury in this cause of action.

## PUNITIVE/EXEMPLARY DAMAGES

The acts of Defendants have been so outrageous that punitive damages are due up to and including attorney fees.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays for the aforementioned actual and punitive damages in amounts to be determined by a jury and for reasonable attorney fees against said Defendants, including all costs of this action.

Dated: 12/19/2024

Respectfully submitted,

AVENTUS LAW, PLLC

*Willie E. Scott, Jr., ESQ.*

WILLIE E SCOTT JR

324 Commons Dr., Suite 34

Birmingham, AL 35209

205-210-8533

willie@aventustoday.com

Attorney for PLAINTIFF